IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| ROBERT NEVILLE, | * | |
| Plaintiff, | * | |
| v. | * | CV 617-075 |
| ELIZABETH McCAGHREN, | * | |
| Defendant. | * | |

**O R D E R**

Before the Court is Defendant's Motion to Dismiss. (Doc. 10.) For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED** for lack of personal jurisdiction over Defendant.

**I. BACKGROUND**

Plaintiff and Defendant are half-siblings and the children of Jessica Stafford Neville ("Decedent"). Plaintiff alleges that, in 2006, Decedent executed a new will (the "Will") and trust agreement (the "Trust Agreement") that was "engineered" by Defendant to favor herself and which appointed her as personal representative of Decedent's estate (the "Estate") and as successor trustee of the trust created thereby (the "Trust"). (Doc. 1, at 2; see also Doc. 14-1, at 10-30 (the Trust

Agreement).[1]) The Trust Agreement also established a special needs trust for the benefit of Plaintiff (the "Special Needs Trust"). (Id. at 3.)

On January 31, 2008, Decedent died in a house-fire at her residence in Gainesville, Florida (the "Residence"). (Id. at 2.) Though Plaintiff lived at the Residence "for about 25 years," he alleges that he was not present during this fire. (Id.) Defendant subsequently razed the Residence and two outbuildings thereon. (Id. at 2-3.) Plaintiff allegedly "had hundreds of thousands of dollars [sic] worth of property" in the Residence and outbuildings that Defendant either converted to her own use, destroyed, or otherwise disposed. (Id. at 3.) Defendant allegedly refused to compensate Plaintiff for this aforementioned personal property. (Id.)

Plaintiff also complains about Defendant's management of the Estate and her interactions therewith. For example, Plaintiff alleges that, prior to Decedent's death, Defendant "looted" the Residence of "antique and rare furniture and other items" and "has failed to account for these items or restore them to the [E]state." (Id.) Similarly, Defendant allegedly "looted" Decedent's safe deposit box and took all valuables therein. (Id.) Plaintiff further alleges that Defendant

---

[1] The Court may consider the Trust Agreement without converting the instant motion to dismiss into a motion for summary judgment because the Trust Agreement is referenced in Plaintiff's complaint, is central to Plaintiff's claims, and its authenticity is undisputed. See Caver v. Cent. Alabama Elec. Coop., 845 F.3d 1135, 1141 n.4 (11th Cir. 2017) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)).

2

received a disproportionate share of the Estate. (Id.) Finally, Plaintiff also alleges that Defendant "effected a 'straw sale' of" the Estate's interest in real property located in Bulloch County, Georgia (the "Bulloch Property"), whereby Defendant "sold the [Bulloch P]roperty from the [E]state to a third party and then bought it back to [sic] for herself . . . to deny [Plaintiff] his property interest in this real property." (Id.)

On May 8, 2017, Plaintiff, proceeding pro se and residing in Louisiana, filed the instant complaint against Defendant.[2] (See Neville v. McCaghren, Case No. 6:17-mc-001 (S.D. Ga. filed May 8, 2017), Doc. 2.) In his complaint, Plaintiff asserts state law claims of "gross negligence," "breach of fiduciary

---

[2] This is not the first time Plaintiff has sued Defendant regarding these same transactions or occurrences. Indeed, Plaintiff initiated an action against Defendant on April 29, 2013 alleging she "defrauded [Plaintiff] of his portion of the [E]state." (See Neville v. McCaghren, Case No. 6:13-cv-50 (S.D. Ga. dismissed Nov. 20, 2013) (the "2013 Action"), Doc. 1.) The 2013 Action was dismissed without prejudice for Plaintiff's failure to timely comply with the Court's Order directing Plaintiff to submit documentation in support of his request to proceed in forma pauperis in that action. (See 2013 Action, Docs. 9, 10, 12, 15.) On March 27, 2015, Plaintiff filed another action against Defendant based on facts and legal claims that were nigh-identical to those asserted in the instant action. (See Neville v. McCaghren, Case No. 6:15-cv-28 (S.D. Ga. dismissed May 20, 2016) (the ("2015 Action"), Doc. 1.) The 2015 Action was voluntarily dismissed by Plaintiff after Defendant asserted that subject-matter jurisdiction was lacking (arguing that both parties were residents of Florida at the time Plaintiff initiated the 2015 Action). (See 2015 Action, Docs. 37, 38; see also 2015 Action, Docs. 41, 52 (providing more detailed histories of the proceedings in the 2015 Action).) Because Plaintiff continued to file frivolous motions in the 2015 Action after its dismissal, the Court imposed filing restrictions of Plaintiff. (See 2015 Action, Doc. 52.) Accordingly, when Plaintiff filed his instant complaint, it was initially forwarded to the undersigned for a preliminary "arguable merit" screening. (See Neville v. McCaghren, Case No. 6:17-mc-1 (S.D. Ga. filed May 8, 2017) (the "Misc. Action"), Docs. 1, 2, 3.) On May 17, 2017, after conducting the aforementioned preliminary screening, the Court allowed Plaintiff's claims to proceed and instructed the Clerk of this Court to file Plaintiff's instant complaint "under a new civil case number" (i.e., the instant case). (See Misc. Action, Doc. 3.)

3

duty," "simple negligence," "exploitation of the elderly/disabled," and "tolling of statutes of limitations," and seeks compensatory/punitive damages and injunctive relief thereon. (See Doc. 1, at 4-6.) Contemporaneously with the filing of his complaint, Plaintiff filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) On August 23, 2017, the United States Magistrate Judge conducted an initial review of Plaintiff's pleadings and other filings and entered an Order wherein he granted Plaintiff's motion for leave to proceed *in forma pauperis* and concluded that, at least "at the screening stage," Plaintiff had alleged "facts sufficient to support diversity [subject-matter] jurisdiction." (See Doc. 7, at 2-3, n.1.)

On November 6, 2017, Defendant moved to dismiss this action for lack of personal jurisdiction and/or failure to state a claim or, in the alternative, to transfer this case to the Northern District of Florida (the "Motion to Dismiss"). (Docs. 10, 11.) Plaintiff subsequently filed a response in opposition - as well as several other papers ostensibly responsive - to the Motion to Dismiss. (See Docs. 12, 13, 20-2, 22, 31.)

## II. LEGAL STANDARD

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a *prima facie* case of

4

jurisdiction over the movant, nonresident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff establishes a *prima facie* case by presenting "enough evidence to withstand a motion for directed verdict." Madera v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion or directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." Walker v. Nations Bank of Florida, 53 F.3d 1548, 1554 (11th Cir. 1995).

In assessing a motion to dismiss for lack of personal jurisdiction, the facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted). If the defendant submits affidavits challenging the allegations in the complaint, however, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010). If the plaintiff's supporting evidence conflicts with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Id. (citing Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

## III. DISCUSSION

In his Complaint, Plaintiff acknowledges that Defendant is not a resident of Georgia.[3] Nevertheless, in his response to the Motion to Dismiss, Plaintiff asserts that Defendant is subject to personal jurisdiction in Georgia because she "committed massive fraud and self-dealing in secret in Bulloch County, Georgia concerning real property located immediately south of Statesboro, Georgia" (*i.e.*, the Bulloch Property). (See Doc. 12, at 1-2.) Yet Plaintiff has not actually pled any facts – nor has he introduced any evidence – in support of his bald conclusion that Defendant's alleged tortious acts or omissions actually occurred in Georgia.[4] (See Doc. 1.) Further, Defendant has filed affidavits and other evidence demonstrating that all relevant transactions with relation to Decedent, the Estate, and their respective assets (including the Bulloch Property) occurred outside of Georgia. (See Doc. 11, at 2-9 (citing Neville v. McCaghren, Case No. 6:15-cv-28 (S.D. Ga. dismissed May 20, 2016) (the ("2015 Action"), Doc. 27-1); Doc. 14-1; 2015 Action, Doc. 27-1, at 1-6.) Defendant and her sister, non-party

---

[3] (See Doc. 1, at 1 ("Jurisdiction by this court is based upon . . . diversity[.] [Defendant] says she is a resident of Florida. She actually resides in 'cabins' in a ski resort near Mars Hill, North Carolina . . . ." (emphasis omitted)).) Notably, the veracity of Defendant's claim that she is a resident of Florida was a hotly-contested issue in the 2015 Action; the Court allowed Plaintiff to conduct jurisdictional discovery on this issue but Plaintiff nevertheless failed therein to provide evidence in support of his assertions that Defendant was in fact a resident of North Carolina. (See 2015 Action, Docs. 33, 35, 41.)

[4] Indeed, in asserting that the relevant statutes of limitations should be tolled, Plaintiff alleges that "many of [Defendant's] actions are unknown to [Plaintiff] or he only has a vague notion of them via rumor." (See Doc. 1, at 6.)

6

Marguerite McMillan Jackson Dill, also attest that Defendant did not sell – and then repurchase – the Bulloch Property to/from a third party, but rather that Defendant and Ms. Dill: (i) received interests in the Bulloch Property as distributions from the Estate pursuant to the explicit terms of the Trust Agreement; and (ii) exercised their rights under the Trust Agreement to purchase the Estate's interest in the Bulloch Property that was otherwise apportioned to the Special Needs Trust established on behalf of Plaintiff.[5] (See Doc. 11, at 5 (citing 2015 Action, Doc. 27-1); Doc. 14-1, at 1-6; 2015 Action,

---

[5] (See Doc. 14-1, at 17-18 ("At the date of the Grantor's [(i.e., Decedent's)] death, the Trustee of the Trust may hold title to certain real property in the State of Georgia which was inherited by the Grantor from her family. In the event the Trustee does hold title to such property, the Trustee shall have such property appraised. As provided in Article X above, an undivided one-third (1/3) interest in such property shall be distributed to each of Grantor's Daughters, [Ms. Dill] and [Defendant], per stirpes. Concerning the one-third (1/3) interest in the property corresponding to [Plaintiff], the Grantor's daughters, [Ms. Dill] and [Defendant], shall have the right of first refusal to purchase his interest at appraised value. If the Grantor's daughters fail to exercise their right of first refusal, the interest in the property shall be sold to a third party. In either event, whether the property is purchased by the Grantor's daughters or sold to a third party, the net proceeds from the sale of the one third (1/3) interest corresponding to Grantor's son, [Plaintiff], shall be distributed to the Special Needs Trust to be established for [Plaintiff] as provided in Article XIII of this Trust Agreement."); see also id. at 16-17 ("Upon the death of the Grantor, the Trustee, after the payment of any legal claims against the Grantor's estate and taxes, if any, in the manner as heretofore authorized, shall distribute the remainder of the trust estate to Grantor's three children, [Ms. Dill], [Defendant], and [Plaintiff], equally, share and share alike, under the terms and conditions hereinafter contained in this Trust Agreement. . . . No beneficiary created under this Article [X] shall have any right or power to anticipate, pledge, assign, sell, transfer, alienate or encumber his interest in the Trust in any way, nor shall any such interest in any manner be liable for or subject to the debts, liabilities or obligations of a Trust beneficiary or claims of any sort against a Trust beneficiary."); id. at 20-22 ("The purpose of this Article [XIII] is to make provisions for distributions, if any, to [Plaintiff]. Notwithstanding Article X, or any other language in this Trust [Agreement] to the contrary, any distribution of principal or income to [Plaintiff] under the terms of this Trust [Agreement] shall not vest in [Plaintiff]. Rather, the distributions that would be distributed to [Plaintiff] shall be held by the Trustee in a separate trust for [Plaintiff] [(i.e., the Special Needs Trust)].").)

7

Doc. 27-1; see also Doc. 14-1, at 10-30.) Defendant admits, however, that she does presently own an interest in the Bulloch Property. (See 2015 Action, Doc. 27-1, at 4.) Nevertheless, Defendant contends that this Court lacks personal jurisdiction over her for any and all of Plaintiff's claims.

To determine whether a nonresident defendant is subject to personal jurisdiction, the Court must perform a two-part analysis. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). First, the Court must determine whether the exercise of personal jurisdiction is proper under the forum state's long-arm statute as that statute would be interpreted by the state's Supreme Court. Id. Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. Id.; Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

As this Court is located in Georgia, Georgia's long-arm statute, O.C.G.A. § 9-10-91, controls the first step of the analysis. The Eleventh Circuit has held that "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, Inc., 593 F.3d at 1259. "[C]ourts must

apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

As to the second-step in the analysis, "the Due Process Clause requires that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there." Id. at 1267 (internal quotations and citations omitted). Due process therefore requires that a nonresident defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (internal quotations and citations omitted). This requires a plaintiff to show that the nonresident defendant "purposefully availed itself of the privilege of conducting activities — that is, purposefully establishing contacts — in the forum state and there must be a sufficient nexus between those contacts and the litigation." Id. "The focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum . . . [to] ensure[] that a defendant will not be subject to jurisdiction based solely on random, fortuitous, or attenuated contacts."

9

Id. at 1268 (emphasis original) (internal quotations and citations omitted).

Here, the vast majority – if not all - of Plaintiff's claims fall clearly outside of the scope of Georgia's long-arm statute. For example, Plaintiff has alleged no well-pleaded facts[6] demonstrating that Defendant: (i) "[t]ransacts any business within" Georgia; (ii) "[c]ommit[ed] a tortious act or omission within" Georgia; or (iii) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Georgia (let alone that she caused a tortious injury in Georgia). See O.C.G.A. §§ 9-10-91(1)-(3). Even if Plaintiff had pled such facts, however, Defendant has rebutted any such allegations with relevant evidence and has shown that all of the challenged conduct occurred outside of Georgia. (See Doc. 14-1, at 1-6; 2015 Action, Doc. 27-1.) Therefore, the burden was on Plaintiff to produce evidence supporting his claims of jurisdiction, Diamond Crystal Brands, Inc., 593 F.3d at 1257, which he has failed to do.

Further, with respect to Plaintiff's claims that do not concern the Bulloch Property, Plaintiff has failed to demonstrate that these claims arise from Defendant's

---

[6] See Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

"[o]wn[ership], use[], or possess[ion] [of] real property situated within" Georgia;[7] rather, these causes of action arise out of Plaintiff's dealings in Florida with Decedent, the Estate, and related assets located outside of Georgia. See also Knieper v. Forest Grp. USA, Inc., 2016 WL 9450454, at *10 (N.D. Ga. Mar. 3, 2016) ("The mere fact of title ownership of realty in Georgia will not support the exercise of personal jurisdiction. Jurisdiction must be predicated on the existence of ties among the defendants, this state, and the litigation. O.C.G.A. § 9-10-91(4) only applies if Plaintiff's causes of action arise out of the defendant's ownership, use, or possession of real property located within the state." (internal quotations omitted) (citing Int'l Capital Realty Inv. Co. v. West, 507 S.E.2d 545, 549 (Ga. Ct. App. 1998); and Murray v. Reese, 436 S.E.2d 79, 81 (Ga. Ct. App. 1993)). Indeed, that a solitary portion of the dealings in Florida between Defendant and Decedent or her Estate that Plaintiff now challenges happened to concern the transfer of ownership rights to real property located in Georgia does not automatically lead to the conclusion that Defendant had sufficient minimum contacts with the State of Georgia such that she should have reasonably anticipated being haled into court in Georgia regarding the

---

[7] See O.C.G.A. § 9-10-91(4).

validity of *all* of Defendant's dealings with Decedent or the Estate in Florida.

Similarly, even Plaintiff's claims relating to the Bulloch Property do not actually arise out of Defendant's ownership, use, or possession of that property; rather, they arise out of Defendant's actions as personal representative of the Estate and Trustee of the Trust (*i.e.*, the valuation and sale of a portion of the Estate's interest in the Bulloch Property) and the exercise of her rights under the Trust Agreement (*i.e.*, Defendant's purchase of the aforementioned portion of the Estate's interest in the Bulloch Property), all of which occurred outside of Georgia. Indeed, these claims are more accurately described as a challenge to the validity of the Will/Trust and Defendant's actions taken pursuant thereto, all of which occurred in Florida. Accordingly, that the challenged actions ultimately had an impact upon the ownership rights to the Bulloch Property does not necessarily mean that Plaintiff's claims challenging those actions as tortious somehow arose from Defendant's resulting ownership of the Bulloch Property.

Even assuming *arguendo* that any of these claims do in fact arise out of Defendant's ownership of the Bulloch Property or that Georgia's long-arm statute is otherwise satisfied, however, Plaintiff has failed to carry his burden to demonstrate that Defendant deliberately engaged in significant activities within

12

Georgia, purposefully availed herself of the benefits and protections of Georgia's laws, or otherwise established sufficient minimum contacts with Georgia so as to satisfy the Constitutional due process inquiry. Indeed, in the context of the conduct challenged by Plaintiff, the physical location of the Bulloch Property in Georgia is a random, fortuitous circumstance rather than a deliberate, purposeful choice. That is, the paramount purpose of Defendant's alleged tortious conduct – all of which occurred in Florida – was the administration and distribution of the Estate's assets pursuant to the terms of the Will/Trust, rather than an intent to acquire property in Georgia or otherwise direct activities towards Georgia residents. Further, Plaintiff has failed to identify any additional factors that would compel a finding that Defendant has deliberately engaged in significant activities within Georgia or otherwise intentionally affiliated itself with Georgia or attempted sufficient contacts with Georgia to satisfy due process. See Diamond Crystal Brands, Inc., 593 F.3d at 1268-69 (listing "further contacts" that might be sufficient to connect a nonresident defendant to a forum). Accordingly, Plaintiff has failed to demonstrate that the quality and nature of Plaintiff's conduct in relation to the State of Georgia is not so random or fortuitous that it can be fairly said that Defendant should have reasonably anticipated being haled into

13

court there on Plaintiff's instant claims. Therefore, this Court lacks personal jurisdiction over Defendant and Plaintiff's claims are due to be dismissed.[8]

### IV. CONCLUSION

Upon due consideration and in accordance with the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (doc. 10) is **GRANTED** and Plaintiff's claims against Defendant are **DISMISSED** due to lack of personal jurisdiction over Defendant.[9] The Clerk is directed to **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this 1ST day of May, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[8] Because Plaintiff has failed to make a showing that Defendant established minimum contacts with Georgia, the Court need not decide whether the exercise of personal jurisdiction over Defendant in this action "would violate traditional notions of fair play and substantial justice." See Diamond Crystal Brands, Inc., 593 F.3d at 1267 (citations omitted). Further, because "[a] court without personal jurisdiction is powerless to take further action," Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (citations omitted), the Court does not reach Defendant's assertions that Plaintiff has failed to state a claim upon which relief can be granted or that this action should be transferred to another forum.

[9] Because Plaintiff has failed to demonstrate that Defendant's filings contain an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter, Plaintiff's motions to strike (docs. 22, 31) are **DENIED**. Additionally, because Defendant has otherwise timely defended in this case and the entry of default would therefore be inappropriate, Plaintiff's motion for default judgment (doc. 27) is also **DENIED**.