IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ROBERT NEVILLE,                    *
                                   *
        Plaintiff,                 *
                                   *
        v.                         *        CV 617-075
                                   *
ELIZABETH C. MCCAGHREN,            *
                                   *
        Defendant.                 *
                                   *

_____

**O R D E R**

_____

Pending before the Court are twelve post judgment motions
from Plaintiff and Defendant's motion for sanctions.  The Court
will address each motion in this Order.

## I.  BACKGROUND

Plaintiff and Defendant are half-siblings and the children of
Jessica Neville, who died in a house fire in 2008.  (Compl., Doc.
1, at 2.)  Plaintiff alleged that his sister engaged in fraud in
administering their mother's estate, both before and after her
death.  (Id. at 3.)  He specifically alleged that Defendant
effected a "straw sale" of the estate's interest in real property
located in Bulloch County, Georgia (the "Bulloch Property").  (Id.)

This is the third time Plaintiff filed a complaint in this
Court making the same allegations.  (See Neville v. McCaghren,

Case No. 6:13-CV-050 (S.D. Ga. dismissed Nov. 20, 2013) ("2013 Action"), Doc. 1; Neville v. McCaghren, Case No. 6:15-CV-028 (S.D. Ga. dismissed May 20, 2016) ("2015 Action"), Doc. 1.) Each action was dismissed for Plaintiff's failure to comply with procedural or jurisdictional requirements. In the 2015 Action, the Court sua sponte imposed sanctions on Plaintiff for continuing to file frivolous motions after judgement, thereby restricting his ability to file cases in this District. (2015 Action, Doc. 52, at 8–10.) Accordingly, when Plaintiff filed the instant Complaint and motion to proceed in forma pauperis ("IFP"), it was preliminarily screened for arguable merit before a new case file was opened. (See Neville v. McCaghren, Case No. 6:17-MC-001 (S.D. Ga. filed May 8, 2017), Docs. 1, 2, 3.) The United States Magistrate Judge concluded that Plaintiff had cured the subject matter jurisdiction issues that eventually led to the dismissal of the 2015 Action. (Order of Aug. 23, 2017, Doc. 7, at 2.) On May 1, 2018, the Court granted Defendant's motion to dismiss for lack of personal jurisdiction after finding that Plaintiff failed to show Defendant had minimum contacts with Georgia. (Order of May 1, 2018, Doc. 35, at 14.) Now, Plaintiff has continued his practice of filing numerous motions after dismissal of his claims.

## II. DISCUSSION

Since October 23rd, Plaintiff has filed twelve motions in this case. (Docs. 47, 48, 49, 50, 51, 53, 54, 60, 64, 65, 70, 73.) Each motion stems either from Plaintiff's disagreements with the Court's decision to dismiss Defendant or his quarrels with defense counsel. Because Plaintiff continues to file motion after motion after this case was closed, Defendant moves for sanctions pursuant to Federal Rule of Civil Procedure 11. (Doc. 63.) The Court will address each motion in turn.

### A. Plaintiff's Motions for Reconsideration

Plaintiff made six filings challenging the Court's May 1st Order finding it had no personal jurisdiction over Defendant. (Docs. 40, 41, 42, 49, 50, 51.) Plaintiff's first three filings are letters submitted within three weeks of the Court's May 1st Order. (Docs. 40, 41, 42.) Five months later Plaintiff made a motion to vacate the Court's judgment and two motions for reconsideration under Federal Rule of Civil Procedure 60(b). (Docs. 49, 50, 51.)

Motions for reconsideration can be made pursuant to Rule 59 or 60, Shaarbay v. State of Fla., 269 F. App'x 866, 867 (11th Cir. 2008), and therefore the court must determine the Rule under which to consider Plaintiff's motions. See, e.g., Brown v. Spells, 2011

3

WL 4543905 (M.D. Ga. Sept. 30, 2011) (resolving whether a motion for reconsideration should be decided under Rule 59 or 60).

The Court does not consider Plaintiff's three May letters to be motions.[1] The documents are not styled as motions and Plaintiff even states "[i]f you wish I will make a formal motion to vacate." (May 24, 2018 Letter, Doc. 42, at 2.) Because those letters are not motions, the first properly filed motion to vacate or motion for reconsideration was made on October 23, 2018 — almost five months past the twenty-eight-day deadline imposed for Rule 59(e) motions. FED. R. CIV. P. 59(e). The Court will therefore analyze Plaintiff's motion to vacate and motions for reconsideration under Rule 60(b), which allows motions to be made within a reasonable time.[2] FED. R. CIV. P. 60(c)(1); see Mahone v Ray, 326 F.3d 1176, 1178 n.1 (11th Cir. 2003).

Rule 60(b) provides that a Court may relieve a party from judgment in a limited number of circumstances including: (1) mistake or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) if the judgment is void; or, (5) if the judgment has been satisfied. FED. R. CIV. P. 60(b)(1)-(5). The catchall provision of Rule 60(b) authorizes relief from judgment based on "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).

---

[1] Document 42 is currently docketed as a motion. The Clerk is **DIRECTED** to terminate that motion.
[2] A motion under Rule 60(b)(1)-(3) must be made no more than a year after entry of the judgment. FED. R. CIV. P. 60(c)(1).

Relief under Rule 60(b)(6) is an "extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (citation omitted).

Plaintiff first argues that the Court erroneously treated Defendant's motion to dismiss for lack of personal jurisdiction as a motion for directed verdict. Plaintiff further argues that the Court misconstrued the timeline of events and ruled incorrectly that Defendant had legal authority under Jessica Neville's will to transact in the Bulloch Property. In support, Plaintiff submits purported affidavits[3] that repeat many of the legal conclusions of his Complaint, namely that Defendant committed fraud during the Bulloch Property transactions.

Plaintiff's arguments do not justify relief under Rule 60(b). He points to no new evidence or "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). Instead, Plaintiff repeats the same allegations he made in his Complaint and numerous prior filings. Simply disagreeing with the Court's ruling is not grounds for relief under Rule 60(b). See Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'r, 916 F. Supp. 1556, 1560 (N.D. Ga. 1995) ("A motion for reconsideration is not

---

[3] Plaintiff's "Affidavits" are not notarized and do not comply with 28 U.S.C. § 1234's required language for unsworn declarations under penalty of perjury.

an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time.").

Contrary to Plaintiff's contention, the Court did not treat Defendant's motion to dismiss for lack of personal jurisdiction as a motion for directed verdict. A directed verdict is a motion made during a jury trial, pursuant to Rule 50. See FED. R. CIV. P. 50. Such a motion is unrelated to a pre-answer motion to dismiss under Rule 12(b)(2).

Additionally, the Court did not rule that the 2006 real estate transactions concerning the Bulloch Property were permitted by the will and trust. The Court merely recited the parties' respective allegations about the events of 2006 and 2008 to determine whether Plaintiff met his burden to show the Court had personal jurisdiction over Defendant. (Order of May 1, 2018, at 6-7.) Plaintiff did not carry his burden then and has not carried his burden now for relief under Rule 60(b). Accordingly, Plaintiff's motion to vacate and motions for reconsideration are denied.

## B. Plaintiff's Motion to Reinstate Magistrate Judge Smith

Plaintiff alleges that the Court had ulterior motives in reassigning this case from United States Magistrate Judge G.R. Smith to Magistrate Judge James E. Graham. He requests Judge Smith be reinstated because his removal from the case "reeks of bias, is patently unfair and is clearly ill-considered" as well as "very

6

improper and almost unprecedented in federal jurisprudence."
(Pl.'s Mot. to Reinstate Original Magistrate, Doc. 47, at 1-2.)

In reality, the reason for the reassignment is a simple one.
Judge Smith retired from the bench after thirty years of service
to the Southern District of Georgia. Judge Graham, an experienced
Magistrate Judge who served in this District for many years, has
agreed to handle Judge Smith's caseload until a successor is
appointed. (See In re Magistrate Judge Assignments, 4:16-MC-016,
Doc. 1.) Further, Plaintiff's motion provides no basis to conclude
Judge Graham has a personal bias against Plaintiff, thereby
requiring his recusal. See 28 U.S.C. § 144. As such, Plaintiff's
Motion to Reinstate Original Magistrate is denied.

## C. Plaintiff's Motions to Sanction Defense Counsel

Plaintiff moves the Court to issue a show cause order to
Defendant to specify why the Court should not impose sanctions or
other penalties for the actions of defense counsel, Susan Warren
Cox and Andrew John Lavoie. (Pl.'s Mot. for Order to Show Cause,
Doc. 48.) Plaintiff accuses both defense attorneys of failing to
read or respond to his communications, acting in bad faith, re-
litigating decided issues, and pretending their client was
blameless. In a subsequent motion, Plaintiff requested the Court
disqualify Mr. Lavoie from the case for failing to honor previous
stipulations, not responding to Plaintiff's communications, and

7

making accusations of harassment by Plaintiff. (Pl.'s Mot. to Disqualify Andrew Lavoie, Doc. 53.)

Disqualification of an attorney "is a harsh sanction, often working substantial hardship on the client" and should "be resorted to sparingly." Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982); see also Bernocchi v. Forcucci, 279 Ga. 460, 463 (2005). There must be "compelling reasons" to override a parties' choice of counsel, and the burden to prove those reasons falls on the party bringing the motion. In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003).

In this Court, the Georgia Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct govern attorney behavior. LR 83.5(d) SDGa. The Georgia Rules warn that a motion to disqualify brought by the opposing party "should be viewed with caution . . . for it can be misused as a technique of harassment." GA. R. PROF'L CONDUCT 1.7, cmt. 15. To order a disqualification, a court must identify a specific rule of conduct and conclude that the attorney violated that rule. Herrmann v. GutterGuard, Inc., 199 F. App'x 745, 752 (11th Cir. 2006).

Plaintiff's motions identify no specific rule that either Ms. Cox or Mr. Lavoie violated. His motions are supported only by purported affidavits in which Plaintiff accuses defense counsel of misconduct with little to no factual support. Plaintiff contends

8

defense counsel "[a]cted in bad faith by failing to acknowledge that plaintiff has legitimate claims" and "[p]retended that their client (Betsy McCaghren) was entirely blameless." (Pl.'s Motion for Order to Show Cause, at 2.) These actions are more appropriately characterized as zealous advocacy for the client, not misconduct requiring disqualification.

Plaintiff further alleges that defense counsel has "[r]e-litigated issues that were decided *stare decisis*." (Id. at 1.) Plaintiff is referring to the Magistrate Judge's decision to allow his claims to proceed from the screening stage, pursuant to 28 U.S.C. § 1915(e)(2). (See Order of Aug. 23, 2017, at 2.) Surviving screening, however, does not preclude Defendant from litigating the issues in this case, including filing a motion to dismiss for lack of personal jurisdiction. Simply put, Plaintiff has not carried his burden to show "compelling reasons" to disqualify defense counsel or issue any other sanctions against Defendant. Plaintiff's Motion for Order to Show Cause and Motion to Disqualify are therefore denied.

## D. Plaintiff's Discovery Motions

Next, Plaintiff moves for an accounting of the transactions Defendant made in Jessica Neville's estate and for permission to conduct limited discovery in this case. (Pl.'s Mot. for Accounting, Doc. 54; Pl.'s Mot. for Leave of Ct. to Conduct Limited

Disc., Doc. 73.) Plaintiff's motions must be denied. The Court has already determined it lacks personal jurisdiction over Defendant and, as discussed above, will not disturb that ruling. This case is closed and will remain closed. It is therefore inappropriate to allow Plaintiff to conduct discovery or order the production of documents from Defendant. Plaintiff's Motion for Accounting and Motion for Leave of Court to Conduct Limited Discovery are both denied.

## E. Plaintiff's Motion for Summary Judgment

Plaintiff made a motion for partial summary judgment on his fraud claims. (Pl.'s Mot. for Partial Summ. J., Doc. 64.) The Court, however, has already entered a final judgment in this action and determined it does not have personal jurisdiction over Defendant. As such, the Court cannot presently consider a summary judgment motion from Plaintiff and his motion is denied.

## F. Plaintiff's Motion to Strike

Plaintiff's final motion requests the Court strike every single pleading Defendant filed in response to Plaintiff's twelve pending motions. (Pl.'s Mot. to Strike All Resp. Pleadings, Doc. 70.) Plaintiff cites to Rule 12(f), which permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). Rule 12(f), however, only applies to pleadings. Id.; see

10

also <u>Newsome v. Webster</u>, 843 F. Supp. 1460, 1464 (S.D. Ga. 1994).
Rule 7(a) defines pleadings as complaints, answers, and replies to
answers. FED. R. CIV. P. 7(a). A response brief is not a pleading
and cannot be struck under Rule 12(f). Accordingly, Plaintiff's
Motion to Strike All Responsive Pleadings is denied.[4]

## G. Defendant's Motion for Sanctions

Defendant moves under Rule 11 for the Court to impose
sanctions on Plaintiff for filing numerous frivolous motions to
harass Defendant, for sending threatening emails to defense
counsel, and for needlessly causing Defendant to incur thousands
of dollars of legal fees. (Def.'s Mot. for Sanctions, Doc. 63.)
Defendant requests that sanctions include a money judgment of
$27,525.56 for legal fees and costs incurred over the course of
Plaintiff's seemingly endless string of lawsuits filed against
Defendant regarding Jessica Neville's estate.

Under Rule 11, when an unrepresented party files a motion or
pleading he certifies that it is not being presented for an
improper purpose, such as to harass, cause unnecessary delay, or
needlessly increase the costs of litigation. FED. R. CIV. P. 11(b).
When an opposing party files a motion for sanctions alleging a
Rule 11 violation, the offending party is given a twenty-one-day

---

[4] Having appropriately addressed each of Plaintiff's motions the Court finds a
hearing on the matter unnecessary. Therefore, Plaintiff's motions for hearing
(docs. 60, 65) are **DENIED**.

11

safe harbor to correct or withdraw the filing and thereby avoid sanctions.[5] See Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003). If no corrective action is taken, Rule 11 sanctions — including monetary sanctions and attorney's fees — may be awarded upon a showing that the offending party filed an objectively unreasonable motion or case. See Johnson v. Barnes, 283 F. Supp. 2d 1297, 1301 n.2 (S.D. Ga. 2003); see also Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1448 (11th Cir. 1998) ("Improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings . . . . Rule 11 is intended to reduce frivolous claims.").

To determine the appropriate sanction, a court should consider:

> (1) Whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants.

---

[5] Defendant served a copy of her motion for sanctions on Plaintiff and gave him the required twenty-one-day "safe harbor" to withdraw or correct the violative motions before filing for sanctions. See FED. R. CIV. P. 11(c)(2).

McDonald v. Emory Healthcare Eye Ctr., 391 F. App'x 851, 853 (11th Cir. 2010) (citing FED. R. CIV. P. 11, advisory committee notes).

Furthermore, "[t]he conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to be imposed." Baker v. Alderman, 158 F.3d 516, 528 (11th Cir. 1998) (citation omitted). A party's IFP status, however, does not preclude monetary sanctions under Rule 11. Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

Plaintiff is no stranger to this Court and must now be considered a "serial filer." This action is the third case Plaintiff has filed in this Court on the same facts. (Order of May 1, 2018, at 3 n.2.) Plaintiff also filed five frivolous lawsuits in the Northern District of Georgia within the last six years. (2015 Case, Doc. 7, at 1 n.1 (detailing Northern District cases filed by Plaintiff).) Florida state courts have deemed Plaintiff a "vexatious litigant" and severely restricted his ability to file any new cases in the state. (2015 Case, Doc. 48-1, Ex. A.) Finally, the Northern District of Florida sanctioned Plaintiff for filing frivolous motions and harassing opposing parties. (Id.) Those sanctions included $1,690.00 in attorney's fees and $3,380.00 in court fines. (Id.; see also Neville v. Botsford, et al., Case No. 1:06-CV-199 (N.D. Fla. 2010), Doc. 122.)

In this Court, Plaintiff has been repeatedly warned that continuing to file frivolous motions will restrict his ability to seek redress. (Order of Aug. 23, 2017, at 2 n.1; 2015 Case, Docs. 45, 52.) In fact, Plaintiff was sanctioned by the Court sua sponte in the 2015 Case because of his penchant for filing motions that repeat frivolous arguments. (2015 Case, Doc. 52, at 8-10.) Plaintiff was barred from filing any more motions in the 2015 Case and restricted from filing any new cases using IFP status without having his complaint screened under 28 U.S.C. § 1915. (Id.) This case was only allowed to proceed after the Magistrate Judge concluded Plaintiff's allegations were sufficient to survive screening. (Order of Aug. 23, 2017, at 2.) Now, Plaintiff has continued to file frivolous motions repeating arguments already refuted by the Court and has engaged in a course of conduct intended to harass Defendant and defense counsel.

Perhaps most alarming are the numerous threatening emails Plaintiff sent to defense counsel. (Aff. Of Elizabeth McCaghren, Doc. 63-2, ¶¶ 4-12.) When emailing his frivolous motions to defense counsel, Plaintiff made threatening and harassing comments including "the knife slips in," "you and Betsy McCaghren are going to learn about the pitfalls of playing with matches," and "can you hear the guillotine?" (Id. ¶¶ 5, 9, 12.)

Plaintiff's harassment does not end there. In January 2018, he arranged a deposition of Florence Van Arnam in Gainesville, Florida. (Id. ¶ 3.) Defendant and her husband travelled from North Carolina to Gainesville at considerable time and expense. (Id.) Plaintiff never showed up for the deposition or formally canceled, thereby wasting Defendant, her family, Ms. Van Arnam, and defense counsel's time and resources. (Id.) The no-show deposition cost Defendant $3,408.06 in attorneys' fees and travel expenses. (Id.; see also Doc. 21, at 2-5.) Suffice to say that Plaintiff has engaged in a systematic pattern of harassment of Defendant and defense counsel.

Considering the factors in McDonald, the Court finds both monetary sanctions and filing restrictions are necessary to deter Plaintiff from continuing to harass Defendant and her counsel. Plaintiff has already been sanctioned once in this Court and once in the Northern District of Florida and is considered a vexatious litigant in Florida state courts. Filing restrictions alone did not deter him from continuing to file frivolous motions or harass Defendant and defense counsel. Thus, monetary sanctions must now be imposed.[6]

---

[6] Defendant's motion for sanctions (doc. 63) is **GRANTED IN PART AND DENIED IN PART**. While the Court finds that monetary sanctions are appropriate, Defendant's request for $27,525.26 in legal fees and costs incurred over multiple lawsuits is too broad. See FED. R. CIV. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, *incurred for the motion.*") (emphasis added).

Accordingly, **THE COURT IMPOSES THE FOLLOWING SANCTIONS ON PLAINTIFF:**

1. The Court **PERMANENTLY ENJOINS** Plaintiff Robert Neville from, either directly or indirectly, litigating the administration of Jessica Neville's estate or the Bulloch Property transactions any further in this Court.

2. The Clerk **SHALL NOT DOCKET** any further motions or papers from Plaintiff in this case, except a notice of appeal. Any papers referring to this case other than a notice of appeal **SHALL** be returned to Plaintiff unfiled. If Plaintiff files a notice of appeal, the Clerk **SHALL** forward a copy of this Order, the notice of appeal, and the dismissed complaint to the Court of Appeals. Plaintiff **SHALL** remain responsible for appellate filing fees or he may move this Court to grant IFP status on appeal.

3. As to any future civil actions sought to be commenced in forma pauperis ("IFP") by Plaintiff, the Clerk **SHALL** continue to follow the prior filing system imposed on Plaintiff for docketing the complaint. (See Neville v. McCaghren, Case No. 6:17-MC-001, Doc. 1, at 8-10.)

4. The Court also imposes a $2,000 sanction against Plaintiff, immediately payable to the "Clerk of Court, Southern District of Georgia."

5.   The Court may also award attorney's fees to Defendant. Defendant is invited to submit an itemized statement of her attorney's fees and costs incurred in connection with this motion for sanctions within **THIRTY (30) DAYS** of this Order.   Plaintiff may respond within **FIFTEEN (15) DAYS** of service of this statement upon him but must respond in one filing.   The restrictions described above shall not apply to Plaintiff's response.


### III.   CONCLUSION

Based on the foregoing, Plaintiff's motions (docs. 47, 48, 49, 50, 51, 53, 54, 60, 64, 65, 70, 73) are **DENIED**.   The Clerk is **DIRECTED** to terminate Document 42 as a motion.   Defendant's motion for sanctions (doc. 63) is **GRANTED IN PART AND DENIED IN PART** and sanctions are hereby imposed.   This case shall remain **CLOSED**.

**ORDER ENTERED** at Augusta, Georgia, this _3rd_ day of January, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA